This Court granted a petition for writ of certiorari in this case because it appeared that the judgment of the Court of Criminal Appeals was based upon an incorrect application of the principle of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963). Mark Monroe Geeslin was convicted of kidnapping and rape. He contends that he was denied his right to a fair trial and to due process of law by the prosecutor's failure to produce an exculpatory medical report even though he requested production of all such reports. The Court of Criminal Appeals affirmed, holding that there was no suppression of evidence because Geeslin "was on notice of the essential facts."
A standard rape examination was performed on the victim shortly after the rape, including a vaginal smear. This smear showed the presence of sperm carrying gonorrhea. Twelve days after the rape, a police officer took Geeslin to the Madison County Health Department, where he submitted hair, saliva, blood, and semen samples for testing. Although there was evidence from which the trial court found that Geeslin was told that his semen sample was being taken for a gonorrhea test and that the victim had contracted gonorrhea from the rape, there was no evidence that Geeslin was told that a semen sample from the victim indicated gonorrhea or that his test proved negative. Geeslin testified that he was not told that the semen sample was tested for gonorrhea and that he thought all of the tests were routine. It is undisputed that the prosecutor did not tell Geeslin's counsel anything about the semen tests or the gonorrhea.
Geeslin's counsel filed a motion requesting the court to order the district attorney to, among other things,
 "Permit the defendant to inspect and copy any results or reports of physical or mental examinations or scientific tests or experiments, if the examinations, tests or *Page 1247 
experiments were made in connection with this case and the results or reports are within the possession, custody or control of the State or if their existence is known to the District Attorney."
This language tracks that of Temporary Rule 18.1(d), Ala.R.Crim.P. The trial judge wrote on this motion, "Granted insofar as the State is capable of compliance." On January 10, 1985, James Accardi, the assistant district attorney in charge of the case, submitted a response stating, in pertinent part: "Only test known to State at this time was that performed by State Department of Forensic Science on hair, saliva, etc."
Accardi admitted at the hearing on the motion for new trial that he knew in October or November of 1984 about the semen sample from the victim testing positive and that he had subpoenaed the hospital emergency room report showing this fact. He did not produce this report in response to the order.
The trial began on January 30, 1985. Prior to that time, Accardi learned that Geeslin's test had proved negative for gonorrhea. Accardi testified that he learned this "two or three weeks, or maybe a month," after he learned about the positive results from the rape sample. This indicates that he knew of it well before he filed the response to the motion for production. After he learned of the result of Geeslin's test, he prepared expert testimony indicating that the negative result could have been affected by antibiotics taken by Geeslin during the time between the rape and his test. The record does not show that Geeslin did in fact take any such antibiotics. The State's expert testified that tests on Geeslin's blood sample taken at the same time as the semen sample could have shown whether Geeslin had taken antibiotics, but the State did not order such tests. The county health department preserved the blood sample until the trial, but no longer had it at the time of the hearing on the motion for new trial.
Geeslin's attorney discovered the facts about the gonorrhea tests about two weeks after trial and filed a motion for new trial on the ground, inter alia, that the State had failed to comply with the pre-trial order for production of exculpatory matter known to the State. At the hearing on this motion, Accardi testified that he did not mention this test conducted by the county health department because he "expected the defense had access to it" because "the defendant himself was told why the test was being performed." The police officer who took Geeslin to the health department testified that he told him what the test was and why it was being conducted. The trial court accepted this explanation and denied the motion. The Court of Criminal Appeals affirmed.
In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196,10 L.Ed.2d 215 (1963), the United States Supreme Court held:
 "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."
The Court went on to observe:
 "The principle of Mooney v. Holohan[, 294 U.S. 103 (1935),] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused. Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."
Id. In a footnote, the Court quoted a remark by a former solicitor general that the state's "chief business is not to achieve victory but to establish justice." Id., n. 2.
Brady is not the only source of this rule — the opinion itself refers to prior cases — but it is so generally cited that a suppression is often referred to as a Brady violation. Cf. Powell v. Wiman, 287 F.2d 275 (5th Cir. 1961); Wiman v.Powell, 293 F.2d 605 (5th Cir. 1961).
One of the developments of the line of cases on this issue is the position that there is no "suppression" if the defendant is aware of the exculpatory evidence. The Court of Criminal Appeals cited a number of cases generally standing for this proposition. *Page 1248 
Another proposition is that, where the defendant makes no request or only a general request, the defendant has a higher burden of showing the materiality or probative value of the evidence before a failure to produce will warrant a new trial.United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392,49 L.Ed.2d 342 (1976); cf. United States v. Bagley, 473 U.S. 667,105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).
Without deciding whether the prosecutor's duty to produce exculpatory evidence upon a specific motion is obviated where the defendant and his counsel have incontrovertible knowledge of the evidence, we hold that the trial court and the Court of Criminal Appeals erred in holding that the district attorney's failure to produce or inform the defense of the report was not a "suppression" on the ground of a finding, based on controverted testimony of the district attorney and a police officer, that the defendant was aware of facts which should have led him to discover the test results.
At the time the sample was taken from Geeslin, he was not represented by the lawyer who later made the motion for production, who represented Geeslin at trial, and who, in fact, was the only counsel of record throughout the proceedings below. There is some indication that another attorney represented Geeslin at his arrest and for a short time thereafter, and that that attorney instructed Geeslin to cooperate with the police in obtaining the samples. There is no indication, however, that the police told that attorney of the gonorrhea test or the reason for it, and they could not have given him the results, which were only obtained later.
Certainly, when Geeslin's trial counsel made the motion for production, Accardi had no indication that the attorney knew of the positive gonorrhea culture from the victim or of the test conducted on Geeslin or the results of that test. Accardi admitted that he had several discussions with the attorney about the motion to produce, but he never mentioned this evidence, which he considered so important that he went to considerable effort to develop rebuttal evidence against it. Accardi communicated frequently with the employees at the county health department who conducted the test and he could very easily have asked if Geeslin had obtained the test results. Under these circumstances, and especially in view of the significant potential effect of the evidence on the jury's determination of guilt or innocence, we find that Accardi was not justified in withholding the information on the assumption that Geeslin and his attorney were so cognizant of the test and its purpose that they would certainly have discovered the test results on their own.
Because the assistant district attorney's failure to comply with the motion to produce exculpatory evidence adversely affected the fundamental fairness of Geeslin's trial, Geeslin was denied his right not to be deprived of liberty without due process of law. U.S. Const., amend. XIV; Const. of 1901, § 6. Therefore, the Court of Criminal Appeals erred in affirming the trial court's denial of Geeslin's motion for new trial. The judgment is reversed and the cause remanded.
REVERSED AND REMANDED.
All the Justices concur.